Thomson, P. J.
On the 22d day of November, 1891, John Hager died intestate, leaving as the only heir, his widow, Katharine Hager. There was, apparently, no attempt at administration of the estate of the deceased, until February 23,1894, when, according to some of the testimony, letters of administration were granted to the widow. In the mean time she used the property as her own, trading it for other property, disposing of it as she saw fit, and paying debts of her husband with the proceeds. On the witness stand she gave as her reason for assuming ownership of the property, that during her husband’s life she had invested her own individual money in stock, which was placed on her husband’s farm, under an agreement with him that all the stock upon the farm should be their joint property, and, upon the death of either, should pass to the survivor, who, upon payment of the debts of the deceased, should be its sole owner.
On the 3d day of November, 1893, as the outcome of a transaction with a Mrs. Johnson, Mrs. Hager executed to her a chattel mortgage of certain milch cows, mules and horses, to secure the payment of a promissory note for $1,000, made by Mrs. Plager to Mrs. Johnson, and due on the 3d day of November, 1895. This note was subsequently purchased from Mrs. Johnson by W. R. Terry. On the 19th day of May, 1894, there was some bind óf a transaction between Mrs. Hager and Mr. Terry, in which the Johnson note and mortgage were canceled, and a new mortgage of the same property given by her to secure her note for $800, payable to him, and due in six months. Somewhere about the 6th day of October, 1894, there was another dealing between Mrs. Hager and Mr. Terry, in which he purchased from her a pasture and a quantity of hay, and paid her some money, and she turned *143 over to him the stock which she had mortgaged to him. On the 16th day of January, 1895, on petition of Mrs. Hager, the probate court authorized her to mortgage the same property to Esther M. Austin, for the purpose of raising money to pay taxes and unsecured debts. From the testimony of Mrs. Hager, it would seem that after this order was made, a mortgage of some kind was given to Mrs. Austin, but we can find no trace of it in the record, and we cannot discover that it was ever introduced in evidence. On the 15th day of April, 1895, Mr. Terry and Mrs. Hager had a final settlement, and he surrendered to her the note and mortgage which she had given him. On the 19th day of April, 1895, the agent of Mrs. Austin demanded from Mr. Terry the property which Mrs. Hager had turned over to him, but he refused then to deliver it. Sometime afterwards, Shep Medera and another, acting for Mrs. Austin, went to Terry’s premises for the stock, a person upon the place, named Ed. Barnes, pointed it out to them, and they took it and delivered it to her. Mr. Terry then commenced this suit in replevin against Medera and Mrs. Austin, to recover the property or its value, and damages for the taking and detention. The jury found for the plaintiff, and assessed the value at $400, and the damages at $300 ; and, after an ineffectual motion by the defendants for a new trial, the court rendered judgment accordingly. The defendants have brought the case here by writ of error.
The cause was very loosely tried for the defendant, and the record discloses a number of errors which are not available to her in this court, because she allowed them to occur without objection or exception. The judgment, however, must be reversed for the reason that the assessment of the damages was not warranted by any proper evidence. Mr. Terry was asked this question: “ What is the value of the use of that stock per day?” The question was objected to on the ground that it was irrelevant and immaterial, and that the damages could not properly be measured by the value of the use of the stock. The objection was overruled, and the defendant excepted. The same question was asked of an *144 other witness, the same objection interposed, the same ruling-given, and the same exception preserved. The answers of the witnesses were substantially the same, and constituted the only evidence given, upon which an estimate of the damages might be made. It was error to admit the testimony. In a case like this, legal interest upon the value of the property, from the time when it was taken, to the time of the trial, furnishes the proper measure of the damages for the detention. There were no facts in evidence which would authorize the application of any different rule to the case. In consequence of the erroneous admission of that testimony, the damages assessed were harshly excessive, and the judgment must be reversed.

Reversed.